## THE STATE, THE EASTON DELAWARE BRIDGE COMPANY, PROSECUTORS, v. ALBERT K. METZ, COLLECTOR OF THE TOWN OF PHILLIPSBURGH.

1. The Easton Delaware Bridge Company, having been incorporated by the concurrent acts of Pennsylvania and New Jersey, has a dual organization, and is capable of acting as one body in either state, and liable to be treated as such. Its capital and surplus are liable to be taxed in both states, on the principle that one-half appertains to each state.

2. A portion of the surplus fund, having been invested in United States securities, must be deducted from the amount, not being subject to taxation.

3. The fourth section of the supplement of 1863, exempting from taxation property out of the state belonging to residents in this state, does not apply to corporations.

*Certiorari* to collector of Phillipsburgh, in matter of taxation.

Argued before the CHIEF JUSTICE, and Justices BEDLE and DALRIMPLE.

For the prosecutor, *A. G. Richey.*

For the defendant, *J. F. Dumont.*

The opinion of the court was delivered by

BEDLE, J. The town of Phillipsburgh assessed the prosecutors, for the year 1865, upon their bridge, capital stock, and surplus, as follows :

| | | |
|---|---|---|
| One-half of bridge and lot | | $25,000.00 |
| " capital stock | $24,677.28 | |
| " surplus | 40,000.00 | |
| | $64,677.28 | |
| Less bridge and lot | 25,000.00 | |
| | | 39,677.28 |
| | | $64,677.28 |

State, Easton Del. Bridge Co., pros., v. Metz, Collector of Phillipsburgh.

The total tax amounts to $1829.72. That one-half of their bridge, abutment, and piers to the centre of the river, are liable to assessment in this state, has already been settled by this court, in two cases of *The State* v. *Metz*. One reported in 5 *Dutcher* 122 ; the other in 2 *Vroom* 378.

The question now to be determined is, whether their capital stock and surplus are liable, under the eighth section of the act of 1862. By that section, the capital stock and surplus of all *private* corporations of this state, except those exempted by contracts with the state, are subject to be assessed. It is urged by the prosecutors that they are not a corporation of this state, in the sense of that act. The company was incorporated by acts of the states of Pennsylvania and New Jersey—that of Pennsylvania on the 13th day of March, 1795, and that of this state on the eighteenth of the same month and year. The acts are the same, each depending upon the other, and the company not to be organized under the charters until the legislatures of each state shall have given the like powers. The prosecutors are a private corporation of this state, but of a peculiar character. So far as their corporate authority in Pennsylvania is concerned, that is foreign to this state, and *vice versa*. The private corporation of this state is blended with the foreign corporation of the other state. Their mode of organization blends the foreign element or quality with the domestic here. Yet for all the purposes of law, it is a corporation of this state. It is also such in Pennsylvania. It is not a corporation of Pennsylvania, owing its existence, as a body, to that state, and merely recognized for certain purposes here. It is no more created in that state than in this. It was not formed by the independent act of either state. It has a dual organization, and when organized it became capable of acting as one body, in either state, and liable to be treated as such. Its objects of taxation could be reached either here or in Pennsylvania, or both. The question is, how can it be taxed, as our law now stands? It is not clear that the legislature

had in contemplation the peculiar stock and surplus of such a corporation. The words of the eighth section, with a general meaning, would embrace the whole stock and surplus. What is the full amount of the capital stock paid in, and accumulated surplus, that is properly connected with this corporation here? This capital was created in each state; the tangible property of the company is necessarily in each state, and the surplus is derived from the capital and property so situated. In the absence of anything expressly showing that the legislature intended to reach the whole capita. and surplus, I think the objects to be taxed against the company should be such as would fairly be considered as connecting themselves to the corporation as a body here. Taxation is of strict right, and general words should not be held to embrace objects coming, it may be, within them, yet not within what may be considered the intention of the legislature. Such general words may be limited by fair, equitable considerations in their application to the subject matter. The preamble to the acts of incorporation contemplates the erection of a bridge across the Delaware, to facilitate the intercourse between the states, and essentially promote the general interest and trade of both. The capital was raised and used for these purposes; each state is interested in it, and although there is no division in amount, yet the court could limit the operation of the law to such part of the capital as would accomplish the object of incorporation in this state. That object was to build one-half of the bridge here, the other half in Pennsylvania. "The boundary line between this state and Pennsylvania, above the falls of the Delaware, extends to the middle of the river—is the *medium filum aquæ.* The compact of 1783, between the two states, is based upon this idea, takes it for granted." Whelpley, J. *State* v. *Metz,* 5 *Dutcher* 123.

The corporation, so far as it exists under our laws, could draw to itself such part of the peculiar capital as would accomplish the object of the charter here, and that would be the capital stock upon which the eighth section should op-

erate. The same principle would apply to the surplus. That is derived from the capital, and would follow with it. The assessment complained of seems to have been made upon the principles as laid down; but in opposition to alleged errors in the estimates, the counsel of defendant urged that the company were liable to be assessed to the full amount of the capital and surplus, and I have, therefore, thought it best to state the principles upon which the assessment could legally be made under our present tax law. This conclusion is the more satisfactory, as a similar result was arrived at in the case of *Pennsylvania* v. *The Trenton Bridge Company*, in that state, reported in 9 *American Law Register* 298.

The effect of these conclusions is to assess the company for one-half of the bridge, abutment, and piers, &c., as real estate, and one-half of their capital stock and surplus, of course deducting the valuation of the one-half of the real estate from the capital and surplus. There is no complaint as to the valuation of the bridge, &c., but it appears that there are only two hundred and ninety-seven shares of the capital stock, at one hundred dollars a share, par value, making $29,700, the one-half being $14,850. That must be taken as the amount of the capital to be assessed in this case.

The surplus fund in 1865 was $110,031.34—of that $40,-143.18 was invested in United States securities, not subject to taxation. This amount should, therefore, be deducted, leaving $69,888.16, one-half of that being $34,944.08, as the surplus fund liable to be taxed.

The assessment should, therefore, be corrected, as follows:·
One-half of bridge, &c. .......... .......... .............$25,000 00
Capital stock, (one-half,)...............$14,850 00
Surplus, (one-half,)......... ..... .........34,944 08

$49,794 08
Less one-half of bridge, &c.........: ......25,000 00
——— 24,794 08

$49,794 08

It was claimed in the argument, that $15,932 of the surplus invested in stock of the Easton Bank had been assessed to the bank, and the tax paid in Pennsylvania; also, that tax had been assessed and paid in that state upon twelve hundred dollars in stock of the Easton Water Company, and that these amounts should be deducted from the whole surplus. The fourth section of the supplement of March 25th, 1863, exempting property of the state, of *residents* in the state, does not apply to corporations. A corporation may be considered as a resident, inhabitant, or citizen, for some purposes, such as jurisdiction or venue, but in this supplement, taking it in connection with the whole tax law, it is evident that the word " resident " was not intended to include a corporation. These amounts cannot, therefore, be deducted.

The objection that the secretary and treasurer of the company, in Easton, refused to give to the assessor a statement, as required by the ninth section of the act of 1862, only affects the right of appeal. It does not defeat the remedy by *certiorari*, if the court see reason to entertain it.

Let the assessment be corrected accordingly.

CITED in *McGregor, qui tam,* v. *Erie Railway Co.,* 6 *Vroom* 118; *State, International and Life Assurance Co.* v. *Haight, Collector,* 6 *Vroom* 280.